[671 NYS2d 79]

STATE OF NEW YORK, Appellant, v ALICIA H. METZ et al., Respondents, et al., Defendants.

First Department, April 14, 1998

## APPEARANCES OF COUNSEL

*Gary R. Connor* of counsel (*Harvey Feldmeier* on the brief; *Dennis C. Vacco, Attorney-General,* attorney), for appellant.

*Margaret C. Reilly* of counsel (*Mulholland, Minion & Roe,* attorneys), for Alicia H. Metz and others, respondents.

*Jeffrey D. Buss* of counsel (*Smith, Buss & Jacobs, L. L. P.,* attorneys), for Peterson Petroleum and another, respondents.

*Karl Zamurs* of counsel (*Michael Jenks* on the brief; *Garcia & Stallone,* attorneys), for James T. Metz, Jr., respondent.

## OPINION OF THE COURT

ANDRIAS, J.

In this Martin Act case involving alleged fraudulent statements made in connection with the sponsorship of two cooperative apartment complexes, the issue presented by the parties is whether the State may use, in support of its motion for partial summary judgment, certain depositions and documents previously obtained by it during its investigation pursuant to sections 352 and 354 of the Act (General Business Law art 23-A).

Based upon information brought to his attention regarding the cooperative conversion of two apartment complexes in Rockville Centre, New York, of which defendants James T. Metz, Jr. and Douglas C. Metz were the sponsors, the Attorney-General initiated an investigation in 1990 pursuant to his pow-

ers under General Business Law § 352. The two complexes, Maplewood Gardens Apartment Corporation and Rockville Tudor Apartment Corporation,[1] were owned and managed by corporations controlled by various members of the Metz family as was the corporation offering financing for the conversion.

The investigation focused upon, among other things, allegations of false statements made in the offering plan. General Business Law § 352 (1) and (2) authorize the Attorney-General to investigate such allegations and to require the submission of "statement[s] in writing under oath" and "data and information" he deems relevant to his inquiry, as well as to subpoena witnesses, examine them under oath and require the production of documents. Failure to obey a subpoena, without reasonable cause, can result in a misdemeanor prosecution (§ 352 [4]).

In response to the Attorney-General's initial inquiry into events surrounding the two cooperative conversions, Alicia H. Metz, the president of defendant Huntington and Kildare, Inc., which owned more than 80% of the unsold shares of the Maplewood Gardens Apartment Corporation as well as defendant Two Lincoln Advisory Services, and defendant Bechtoldt Corporation, the managing agent for the conversion, her father James T. Metz, Jr., one of the sponsors, and Howard Bodner, the attorney for the sponsors, testified and produced documents. At the beginning of each examination the witnesses were advised by an Assistant Attorney-General that anything they said or any documents they produced could be used against them in a legal proceeding; they were also advised of their right to invoke their privilege against self-incrimination and that any willful misstatement could constitute perjury. Further, witnesses were informed that they could have an attorney present if they so chose. Each explicitly acknowledged that he or she understood their rights. In addition, witnesses who are not parties to this action, such as Robert Galluscio, an accountant for the Maplewood Gardens Apartment Corporation, testified under oath pursuant to subpoena and produced documents as requested. Shareholders of the cooperative corporations who had allegedly been defrauded also testified.

As the investigation progressed and he determined to commence this action to permanently enjoin defendants from offering or selling real estate securities, the Attorney-General

---

**1.** A separate action seeking to remove some of the defendants as directors and/or officers of this corporation is presently pending in Supreme Court, New York County.

sought and obtained a Supreme Court order, pursuant to General Business Law § 354, directing James T. Metz, Jr., Douglas C. Metz, Maplewood Gardens Realty, Alicia H. Metz, Lawrence McGowan, the Bechtoldt Corporation, Huntington and Kildare, Inc., Peterson Petroleum of New Hampshire, Inc., Two Lincoln Advisory Corp. and Howard Bodner to appear before a Justice or Referee on November 15, 1993 to testify and to produce documents. The order also enjoined them from further sales at the Maplewood Gardens cooperative, from conveying any interests in the premises to others and from spending funds of the cooperative (except with certain approvals from nonsponsor directors). Beginning in November 1993, testimony of various respondents was taken over the course of several months.

The Attorney-General commenced this action on September 13, 1994, pursuant to General Business Law § 353, seeking, among other things, to permanently enjoin the defendants from engaging in the public offer of real estate securities within and from the State of New York and restitution and damages for injured shareholders of the two cooperatives.

Answers were submitted by all the defendants except defendant Cobble Ponds Farms, Inc. and generally assert various denials and raise affirmative defenses such as failure to name necessary parties, lack of sufficient information to answer the allegations and the Statute of Limitations.

On December 29, 1995, the State moved for partial summary judgment against most of the defendants on its first, second, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, fifteenth, sixteenth and twentieth causes of action, seeking a judgment permanently enjoining them from engaging in the public offer of real estate securities within and from the State of New York, the voiding of a $1,500,000 note entered into by defendant Alicia H. Metz on behalf of the Maplewood Gardens cooperative, an injunction enjoining the defendants from controlling or managing any cooperative interests in realty, a hearing on the issue of damages and restitution and severance of all other causes of action for trial.

Defendants Alicia H. Metz, Kathryn Metz and Lauren Metz Simon and defendants Peterson Petroleum of New Hampshire, Inc. and Two Lincoln Advisory Services, Inc., both of which are owned by Huntington & Kildare and neither of which conducted any discovery in the action, rather than opposing the motion on its merits, cross-moved separately to preclude the Attorney-General from relying upon or submitting to the court pages 689 to 2405 of the Appendix the State had annexed to its mo-

tion for partial summary judgment, which consisted of deposition testimony and documents obtained during the Attorney-General's Martin Act investigation.

The defendants' rationale was that this matter would and should be settled and that, in the interests of judicial economy, the court and defense counsel should not have to read and analyze approximately 1,800 pages of documents offered in support of the motion for partial summary judgment, which would, as a matter of law, be inadmissible to support a motion for summary judgment. They asserted that the documents constituted "*ex parte* depositions" and documents obtained in connection with those "depositions" and contended that absent compliance with the Civil Practice Law and Rules notice provisions and the right to cross-examine, the documents could not be used. Thus, it was argued, such material should be precluded from use by the State to support its summary judgment motion. In addition, the defendants sought a stay of the motion for partial summary judgment and the appointment of a Referee to negotiate a settlement of the case. A temporary restraining order was issued tolling the defendants' time to answer the State's motion for partial summary judgment, even though the defendants had already defaulted in answering the State's motion.

In what it characterized as a case of first impression, the motion court, in permitting use of the documentary evidence but precluding the use of the deposition testimony, found, *inter alia*, that there is nothing in the Martin Act that provides that material obtained pursuant to General Business Law §§ 352 and 354 may be used as the basis of a summary judgment motion or even as trial evidence in lieu of CPLR-prescribed depositions. In addition to precluding the use of the Martin Act depositions, the court appointed a Judicial Hearing Officer "to assist the parties in either mediating their differences or formulating a discovery plan" (171 Misc 2d 525, 530).

We disagree and modify accordingly.

The State is entitled to have its summary judgment motion resolved on its merits. There is simply no provision in CPLR 3212, governing motions for summary judgment, for either defendants' cross motions to preclude or the relief granted by the motion court. Furthermore, by focusing on the provision governing *the use of depositions at trial and hearings* (CPLR 3117), rather than on the provision enumerating the types of proof allowable in support of a motion for summary judgment (CPLR 3212 [b]), the court erroneously determined that the

Martin Act depositions may not be used in support of a motion for summary judgment.

CPLR 3212 (b) outlines the court's options when one or more of the parties makes a motion for summary judgment. It provides that, except where the court, when appropriate for the expeditious disposition of the controversy, orders an immediate trial of factual issues raised by the motion, the court has only two options: it shall grant the motion if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court in directing judgment in favor of any party as a matter of law; or, it shall deny the motion if any party shall show facts sufficient to require a trial of any issue of fact.

Here, the plaintiff's motion for summary judgment contained the required pleadings and moving affidavit and was supported by oral testimony (the Martin Act investigatory depositions), books, papers, records and documents. While precluding the use of the Martin Act depositions, the motion court found no basis to preclude the use of the documents obtained by the Attorney-General pursuant to General Business Law §§ 352 and 354 investigative subpoenas. However, even if the motion court was correct in "precluding" the Martin Act depositions, it is possible that the moving affidavit[2] and the extensive documentary evidence alone may have been sufficient to warrant the granting of summary judgment. Thus by entertaining the defendants' cross motion to "preclude," the court avoided resolving the motion on its merits as is required by CPLR 3212 (b).

More importantly, defendants were allowed to defeat the very purpose of summary judgment by avoiding the well-established burden of a party opposing a motion for summary judgment to assemble and lay bare affirmative proof to demonstrate the existence of a genuine triable issue of fact (*Stainless, Inc. v Employers Fire Ins. Co.*, 69 AD2d 27, *affd* 49 NY2d 924; *see generally,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3212:16 ["Laying Bare the Proof"]). This result was particularly egregious here, where the defendants themselves are in possession of all of the relevant information about the financial history and operations of these real estate enterprises.

This is not a situation where a party, in opposing summary judgment, contends in affidavits that there may be "facts es-

---

2. The deposition testimony of the allegedly defrauded shareholders was also submitted but could have been provided in affidavit form.

sential to justify opposition" but that they are unavailable to him or her. In such a case, the court has the authority to order a continuance to permit the respondent to obtain "affidavits" or "disclosure." (CPLR 3213 [f].) Here, however, the defendants do not protest that there are facts that they are unable to obtain; they are merely objecting to the method the Attorney-General utilized to obtain the facts set forth in his moving papers.

While the motion court recognized that summary judgment is a procedural device to accelerate judgment by eliminating the trial stage when the only issues to be resolved are questions of law, it nevertheless overstated the concept that summary judgment is the functional equivalent of a trial and proceeded to treat defendants' cross motions as motions *in limine*. Generally, the function of a motion *in limine* is to permit a party to obtain a preliminary order before or during *trial* excluding the introduction of anticipated inadmissible, immaterial, or prejudicial evidence or limiting its use. Its purpose is to prevent the introduction of such evidence to the trier of fact, in most instances a jury. The role of the court on a motion for summary judgment, and we emphasize the summary nature of the motion, is not to try the facts, but rather to determine whether evidence sufficient to require a trial of any issue of fact exists. "[I]t is the earmark of summary judgment that the court is confined to determining whether an issue of fact exists as a matter of law" (*Phillips v Kantor & Co.*, 31 NY2d 307, 315).

CPLR 3212 (b), which governs the types of proof allowable in support of a motion for summary judgment, provides in pertinent part: "A motion for summary judgment shall be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions". Although General Business Law § 357 specifically provides that the provisions of the CPLR "shall apply to all actions brought under this article except as herein otherwise provided", there is nothing in the General Business Law itself restricting the use of Martin Act-generated depositions or documents. By focusing solely on the definition and use of CPLR depositions and their use "[a]t the trial or upon the hearing of a motion" (CPLR 3117 [a]), the motion court ignored the issue of whether Martin Act investigatory depositions can constitute an "affidavit", "depositions", "written admissions" or "other available proof" and thereby be appropriately considered by the court as supporting proof on a motion for summary judgment (CPLR 3212 [b]).

The use of depositions at trial must be carefully restricted, because, as the motion court noted, the right to cross-examine is a fundamental right that ensures the opposing party the chance to present its side and the fact finder the opportunity to discover the truth; in short, the trial is where issues of fact are resolved. On a summary judgment motion, however, where the sole issue is whether an issue of fact exists for resolution at trial, the statement of an unexamined witness, such as an affidavit, can be neutralized just by submitting opposing affidavits or other evidence. Indeed, the motion court did not preclude the Attorney-General's use of subpoenaed documents, which obviously cannot be cross-examined but could possibly be countered by opposing affidavits. Thus, while a motion for summary judgment must be supported by evidentiary facts, they need not necessarily be in the form used at trial. CPLR 3212 does not provide an exclusive list of what items can be used in support of a motion for summary judgment but, rather, states that affidavits and "other available proof, such as depositions and written admissions" are adequate (CPLR 3212 [b]). Therefore, it would follow that any item of proof as reliable as an affidavit should be considered on a summary judgment motion.

The depositions of the defendants obtained pursuant to General Business Law §§ 352 and 354 are clearly admissions of those parties and allowable as supporting proof on a motion for summary judgment under CPLR 3212 (b). Even though we have determined that CPLR 3212 (b), rather than CPLR 3117, controls here, one could persuasively argue that these admissions would nevertheless meet the more demanding standard of subdivision (a) (2) of CPLR 3117.

Whether or not the Martin Act depositions of the defendants meet the CPLR requirements for use at trial under paragraph (3) of subdivision (a) of CPLR 3117 ("the deposition of any person * * * for any purpose"), the depositions, which are *of parties*, would certainly meet the test of subdivision (a) (2) of CPLR 3117, which does not require notice. As noted by Professor Siegel in his Practice Commentary to the section, permitting a party's deposition to be used without any foundation,

" 'for any purpose' by any adversely interested party * * * includes perhaps the most important of all the uses to which a deposition may be put: evidence in chief of the facts deposed to.
* * *

"Under paragraph 3 of subdivision (a), the deposition may be read only against a party who had notice of the deposition's

taking. Paragraph 2 does not contain that restriction." (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3117:3, at 569.)

The depositions obtained pursuant to General Business Law §§ 352 and 354 are arguably far more reliable than an affidavit. The Attorney-General is authorized by those provisions to question witnesses under oath. The witnesses are explicitly warned that any misstatements may constitute perjury and they are allowed to have counsel present. The depositions conducted under General Business Law § 354, which comprise most of the depositions submitted in support of the State's motion, were held under the auspices of a Special Referee, which further impressed upon the witnesses the importance of their testimony, as well as safeguarding them. Moreover, all the defendants were notified of the section 354 depositions, and in the case of Alicia Metz, her attorney was afforded the opportunity to cross-examine.

The fact that the testimony was not "voluntary," but rather obtained under compulsion of subpoena or court order, should not preclude its use on summary judgment, as the lower court determined. Indeed, the subpoenas and court orders could only bolster the magnitude of the examination and thus tend to heighten the reliability of the testimony. "[T]estimony by deposition * * * is a higher order of proof than an affidavit. An affidavit, usually prepared by a lawyer, and signed by the affiant, is hardly the equivalent in value of a deposition by question and answer, especially when the questioning is done by the adverse attorney" (*Di Sabato v Soffes*, 9 AD2d 297, 307 [Breitel, J., dissenting]).

To the extent the testimony was one-sided (again with the exception of Alicia Metz, who was cross-examined), the depositions, like affidavits, could be countered with affidavits or other proof to defeat the State's summary judgment motion. Here, as previously noted, the defendants, who are all officers or directors of the subject enterprises, are uniquely in a position to counter the State's proof by affidavit or otherwise.

Moreover, unlike all of the cases relied upon by the motion court, which involved the use of deposition testimony at trial, the previously obtained testimony here is sought to be used in support of a motion for summary judgment.

The Attorney-General aptly points to Federal cases which have permitted the use of similar sworn testimony taken in Securities and Exchange Commission investigations on a motion for summary judgment (*e.g.*, *Securities & Exch. Commn. v*

*Research Automation Corp.*, 585 F2d 31, 34, n 5, citing *Securities & Exch. Commn. v American Commodity Exch.*, 546 F2d 1361; *see also, Hoover v Switlik Parachute Co.*, 663 F2d 964, 967 [depositions inadmissible as Federal Rules of Civil Procedure, rule 56 (e) depositions because of no opportunity to cross-examine were nevertheless considered the substantial equivalent of and met the requirements of rule 56 (e) affidavits since they were made on personal knowledge and set forth facts admissible in evidence]).

This Court has similarly held that even where the unfinished deposition of a deceased witness was not permitted to be used at trial, such suppression is no bar to the introduction into evidence of any portions of the testimony of the witness if, based upon a proper foundation, they may be received as admissions or are properly admissible in any other manner (*Stern v Inwood Town House*, 22 AD2d 650.

In any event, "[r]ules of evidence should be guardedly and cautiously applied on an application for summary judgment, particularly where there are many exceptions to general rules and where the application of a rule of evidence or the exceptions thereto can best be determined upon evidence offered at a trial" (*Exchange Leasing Corp. v Bundy*, 29 AD2d 828). Thus, rather than entertaining defendants' cross motions seeking an *in limine* evidentiary ruling, the motion court should have required defendants to oppose the State's motion on its merits, at which time, in addition to their affidavits raising factual issues, if any, they would be able to raise, and the court determine, the validity of any evidentiary objections to the use of the deposition testimony obtained pursuant to the Martin Act or, indeed, any evidence offered in support of the motion. Then, if the motion court determines that questions of fact are presented or that the State has failed to submit sufficient evidentiary proof in admissible form to establish its entitlement to judgment as a matter of law, it shall deny the motion.

Accordingly, the order of the Supreme Court, New York County (David Saxe, J.), entered February 10, 1997, which granted the cross motions of defendants Alicia H. Metz, Kathryn Metz and Lauren Metz Simon and of defendants Peterson Petroleum of New Hampshire, Inc., and Two Lincoln Advisory Services, Inc. to the extent of precluding the State from submitting certain depositions in support of its motion and denied the State's cross motion for an order deeming the movants' cross motions their answer to its pending motion for partial summary judgment, imposing sanctions, and granting such motion,

should be modified, on the law, the defendants' cross motions denied, the matter remanded for the court to set a schedule for defendants to oppose the State's motion on its merits, and otherwise affirmed, with costs payable to plaintiff.

ROSENBERGER, J. P., NARDELLI and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered February 10, 1997, modified, on the law, the defendants-respondents' cross motions to preclude the plaintiff from submitting certain depositions in support of its motion denied, and the matter remanded for the court to set a schedule for defendants-respondents to oppose the plaintiff's motion on its merits, and otherwise affirmed, with costs payable to plaintiff.